UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY MICHAEL MULLEN, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AARON'S INC.,<br><br>Defendant. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiff, Bartley Michael Mullen, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Aaron's Inc. ("Defendant") for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 12181 *et seq.* (the "ADA") and its implementing regulations, averring as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights class action on behalf of all others similarly situated against Defendant for violations of Title III of the ADA and its implementing regulations in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled and/or leased by Defendant ("Defendant's facilities").

2. Despite passage of the ADA more than twenty-five years ago, to this date, Defendant's properties are not fully accessible to persons with mobility disabilities. Defendant has discriminated, and continues to discriminate, against Plaintiff, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services,

1

facilities, privileges, advantages and accommodations at Defendant's retail stores because of Defendant's inaccessible parking lots and paths of travel.

3. Defendant has also failed to make reasonable modifications to its policies, practices, and procedures that are necessary to provide its goods, services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that its parking facilities are accessible, Defendant subjects Plaintiff and those similarly situated to discrimination in violation of the ADA.

4. Defendant will continue discriminating unabated unless and until enjoined as Plaintiff requests. Accordingly, Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory conduct, including an order directing Defendant to make readily achievable alterations to its facilities to remove physical barriers to access and to make its facilities fully accessible to and independently usable by people with disabilities to the extent required by the ADA; an order requiring Defendant to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; and a declaration determining that Defendant's policies and practices of discrimination result in a violation of Title III of the ADA and its implementing regulations; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

5. The ADA was enacted over a quarter century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

6. The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

7. The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

8. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i),

or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

9. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF ACCESS

10. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

11. The ADA requires public accommodations to provide individuals with mobility disabilities full and equal enjoyment of the public accommodation's facilities. 42 U.S.C. § 12182(a).

12. The ADA specifically lists access to public accommodations as the first priority that public accommodations should address in ensuring access: "First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces." 28. C.F.R. § 36.304.

13. The ADA and its implementing regulations define prohibited discrimination to include the following: (1) the failure to remove architectural barriers when such removal is readily

4

achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); (2) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1); (3) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and (4) the failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

14. The ADA requires public accommodations to design and construct facilities to be readily accessible to, and independently usable by, individuals with disabilities – in other words, a facility's access and usability must be "ready" for an individual with a disability. 42 U.S.C. § 12183(a)(1).

15. When a facility is altered in a manner that affects or could affect its usability, the facility must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

16. "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG'), which lay out the technical structural requirements of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015).[1] The ADAAG, in relevant part, provides detailed guidance regarding slope requirements

---

[1] The ADAAG is promulgated by the Department of Justice pursuant to 42 U.S.C. § 12186(b). There are two active ADAAGs, the 1991 ADAAG Standards ("1991 Standards") and the 2010 ADAAG Standards ("2010 Standards"). The 1991 Standards appear in 28 C.F.R. § pt. 36, App. D, and are available at: https://www.ada.gov/1991standards/adastd94-archive.pdf. The 2010 Standards appear in 36 C.F.R. § pt. 1191, App. D, and are available at: https://www.ada.go

for parking spaces and paths of access. *See* 36 C.F.R. § pt. 1191, App. D (the 2010 Standards), §§ 403.3, 405.2-3, 502.4; 28 C.F.R. § pt. 36, App. D (the 1991 Standards), §§ 4.3.7, 4.6.3, 4.8.2, 4.8.6. These requirements are designed to make it possible for a person with a mobility disability to identify, and then utilize an accessible parking space and independently access a business.

17. When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation ***shall*** remove architectural barriers in existing facilities . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added).

18. The failure to remove architectural barriers, where such removal is readily achievable, is discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(iv).

19. Public accommodations also must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities[.]" 28 C.F.R. § 36.211(a). While isolated, temporary and reasonable disruptions in access are permitted, *see* 28 C.F.R. § 36.211(b), however, allowing inaccessibility to persist beyond a reasonable period of time, allowing accessible features to repeatedly fall out of compliance, or failing to arrange for prompt repair of inaccessible features violate the ADA. *See* 28 C.F.R. pt. 36 app. C § 36.211; Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508, 34523 (June 17, 2008).

20. In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA further prohibits places of public

---

v/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf.

accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

21. The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

22. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

23. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

24. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

25. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

26. Plaintiff Bartley Michael Mullen, Jr., at all times relevant hereto, is and was a resident of Pennsylvania.

27. Plaintiff, as a result of his disability, relies upon a wheelchair for mobility at all times. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

28. Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

29. Defendant Aaron's Inc. is a corporation organized under Georgia law, and is headquartered at 400 Galleria Pkwy SE, Suite 300, Atlanta, Georgia 30339.

30. Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE

**Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities.**

31. Plaintiff has visited Defendant's facilities located at 4778 McKnight Road, Pittsburgh, PA, including within the last year, where he experienced unnecessary difficulty and risk due to excessive slopes in Defendant's purportedly accessible parking facility, as set forth in more detail below.

32. As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and safely use Defendant's facilities has been significantly impeded.

33. Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

34. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of his rights under the ADA.

35. As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

36. Though Plaintiff is serving as a tester in this case, Plaintiff would like to patronize Defendant's facilities in the future and utilize Defendant's services; however, Defendant's inaccessible facilities have, and continue to, deter Plaintiff from patronizing Defendant's facilities.

**II.  Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facilities.**

37. Defendant is engaged in the ownership, operation, management and development of consumer goods rental stores throughout the United States.

38. As the owner and/or operator and manager of their properties, Defendant employs centralized policies, practices and procedures with regard to the design, construction, alteration, maintenance and operation of its facilities.

39. To date, Defendant's centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendant's facilities are maintained.

40. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

   a) 1461 Old Broadhead Rd, Monaca, Pennsylvania

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

    b) 4778 McKnight Rd, Pittsburgh, Pennsylvania

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

    c) 4387 South Ferdon Blvd, Crestview, Florida

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

        ii. A curb ramp projected into an access aisle.

    d) 61 Brent Lane, Pensacola, Florida

        i. The facility's entrance had a slope exceeding 2.1%.

    e) 2616 W 12th St, Erie, Pennsylvania

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and,

        ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

    f) 3219 Leechburg Rd, Lower Burrell, Pennsylvania

        i. A curb ramp projected into an access aisle.

    g) 25001 W 8 Mile Road, Redford, Michigan

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

    h) 6750 Camden Blvd, Fountain, Colorado

        i. A curb ramp projected into an access aisle.

    i) 8455 N Pecos St, Federal Heights, Colorado

        i. A curb ramp projected into an access aisle.

41. The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendant's facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, caused by Defendant's systemic disregard for the rights of individuals with disabilities.

42. Defendant's systemic access violations demonstrate that Defendant either employs policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility.

43. As evidenced by the widespread inaccessibility of Defendant's parking facilities, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated.

44. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's network of facilities.

## CLASS ALLEGATIONS

45. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure individually and on behalf of the following classes:

   (1) All persons with qualified mobility disabilities who, due to Defendant's failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking facilities at all locations within Pennsylvania for which Defendant owns and/or controls the parking facilities.

   (2) All persons with qualified mobility disabilities who, due to Defendant's failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking facilities at all other locations within the United States for which Defendant owns and/or controls the parking facilities.

46. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

47.     Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

48.     Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services and facilities due to the discriminatory conduct described above.

49.     Adequacy of Representation: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

50.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

### Violations of 42 U.S.C. §§ 12181, *et seq.*

51.     Defendant has failed, and continues to fail, to provide individuals with mobility disabilities with full and equal enjoyment of its facilities.

52.     Defendant has discriminated against Plaintiff and the putative classes in that Defendant has failed to make Defendant's facilities fully and readily accessible to, and

independently usable by, individuals with mobility disabilities in violation of 42 U.S.C. § 12182(a), 42 U.S.C. § 12183(a)(2), and the ADAAG, as described above.

53. The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals with mobility disabilities. 42 U.S.C. § 12183(a).

54. The accessible features of Defendant's facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 CFR § 36.211.

55. The architectural barriers described above demonstrate that Defendant's facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs. 28 CFR § 36.211(a).

56. Furthermore, the architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

57. Defendant has possessed sufficient financial resources, control, and authority to remove the architectural barriers and modify its parking facilities to comply with the ADAAG, but Defendant has not removed such impediments and has not modified its parking facilities. Instead, Defendant has intentionally maintained its retail stores to be inaccessible and has refrained from making alterations to comply with the ADAAG.

58. Defendant's repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

59. By failing to provide accessible parking facilities, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

60. Defendant's policies, practices, and/or procedures, or Defendant's failure to modify policies, practices, and procedures, (1) deny individuals with mobility disabilities full and equal access to all of the goods, services, privileges, advantages, and accommodations that make up Defendant's retail stores; (2) ensure barriers within Defendant's facilities persist indefinitely and remain unremoved; and (3) ensure Defendant's facilities do not comply with ADA building design regulations and standards.

61. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendant's goods, services, facilities, privileges, advantages, and accommodations.

62. Defendant's ongoing and continuing violations of Title III have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiff and those similarly situated.

63. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs: (i) Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) that Defendant changes its policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing Plaintiff's counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: March 11, 2019

Respectfully submitted,

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Kelly K. Iverson
Bryan A. Fox
**Carlson Lynch, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243 (Tel.)
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com
bfox@carlsonlynch.com